## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------x

ARIEL WENTWORTH

        Plaintiff,

v.

CARGROUP HOLDINGS, LLC, *individually and d/b/a* WEBUYANYCAR.COM, and CARLOS ACEVEDO,

        Defendants.

-----------------------------------------------------------------x

Civil Action No. 2:24-cv-00870

**PLAINTIFF DEMAND A TRIAL BY JURY**

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Ariel Wentworth, (hereinafter referred to as "Plaintiff" or "Ms. Wentworth"), by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, as and for Plaintiff's Complaint in this action against the Defendant CARGROUP HOLDINGS, LLC, *individually and doing business as*, WeBuyAnyCar.COM (hereinafter referred to as "Defendant WBAC"),  and Defendant Carlos Acevedo (hereinafter referred to as "Defendant Acevedo) collectively hereinafter referred to as "Defendants") upon both information and belief, alleges as follows:

### INTRODUCTION

1.      At its core, this case is about a young woman who was subject to a hostile work environment and mistreatment disproportionate to that of her male colleagues, and, whom after raising this mistreatment to the attention of the Defendant WBAC, was unlawfully terminated.

2.      Plaintiff Wentworth brings this is, an action for monetary damages and all other appropriate relief as deemed appropriate by the court, for gender discrimination and unlawful termination, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, as

amended ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and hereby seeks monetary relief to redress the injuries Plaintiff has endured as a result of being unlawfully harassed, discriminated against on the basis of gender, and retaliated against by Defendants for complaining of harassment and discrimination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the varying Federal and State common law.

4. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C. §2000e-5(f)(3), and §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391. In accordance with the Federal Rules of Civil Procedure, venue is proper in this district based upon the fact that Defendant's unlawful actions occurred within the Eastern District of Pennsylvania. Furthermore, Defendant WBAC was and still is believed to be conducting business in this judicial district. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful conduct herein occurred in this district. Further still, Defendant Acevedo is believed to reside within this district.

## PARTIES

6. Plaintiff, Ariel Wentworth (hereinafter also referred to as Plaintiff and "Ms. Wentworth") is an individual female, and resident of Mercer County, within the State of New Jersey.

7. Defendant CARGROUP HOLDINGS, LLC, is a foreign limited liability company registered with the State of Delaware and authorized to conduct business within the Commonwealth of Pennsylvania.

2

8.     At all times material, Defendant CARGROUP HOLDINGS, LLC did and continues to do business as WeBuyAnyCar.com (hereinafter referred to as "WBAC").

9.     Defendant WBAC maintains its principal place of business at 1023 E. Baltimore Pike, Media PA 19063.

10.     Defendant WBAC is a "person" within the meaning of 42 U.S.C. §2000e(a), and an "employer" within the meaning of 42 U.S.C. §2000e(b).

11.     At all relevant times, Defendant WBAC has been continuously doing business in the Commonwealth of Pennsylvania and has continuously held at least 15 employees for all relevant calendar years. *42 U.S.C. § 12111(5)(A).*

12.     At all times material, Defendant WBAC was Ms. Wentworth's employer pursuant to all applicable federal, state, and/or local ordinances.

13.     The Defendant WBAC's exact number of employees is unknown, but upon information and belief, there is well more than the statutory minimum.

14.     At all times material hereto, Defendant Carlos Acevedo (hereinafter referred to as "Acevedo"), was employed by Defendant WBAC as an "Area Manager."

15.     As such, Defendant Acevedo, as an "Area Manager" asserted supervisory authority over Plaintiff. In his role, Acevedo maintained operational control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

16.     At all times material, Defendant. Acevedo is believed to be individual male.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.     On December 16, 2022, Plaintiff timely dual-filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC") setting forth Defendants violations of Title VII and the

Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").

18.    Plaintiff by and through her attorney requested, that her Charge be simultaneously filed with the EEOC, PHRC and any other State or local agency with whom these Agencies had a work sharing agreement.

19.    On or around January 10, 2024, the EEOC issued Plaintiff a Notice of Right to Sue within 90 Days.

20.    This action is being commenced within ninety (90) days of Plaintiff receiving the above referenced Notices of Right to Sue.

21.    On or around December 19, 2023, the PHRC issued Plaintiff its formal written notice indicating that more than one (1) year had passed since the original filing, thereby providing Plaintiff "the right to bring an action in the appropriate" court.

22.    This action is being commenced more than one year after Plaintiff's initial agency filing date. To date no determination has been made by the PHRC relating to the herein complaint.

23.    Plaintiff have complied with all administrative prerequisites to bring this lawsuit.

### FACTUAL BACKGROUND COMMON TO ALL CAUSES OF ACTION

24.    Ms. Wentworth is an individual female, and therefore a protected class member.

25.    On or around June 27, 2022, Defendant WBAC hired Plaintiff as a "Branch Manager." At the outset of her employment, Defendant WBAC instructed Plaintiff that she would work from 1618 Princeton Avenue, Lawrence Township, New Jersey 08648 (hereinafter referred to as the "Lawrence Office").

26.     In or around the week of July 18, 2022, Defendant WBAC transferred Plaintiff to 200 Lincoln Highway, Fairless Hills, Pennsylvania 19030 (hereinafter referred to as the "Langhorne Office"). At this time, Defendant WBAC advised Plaintiff that, moving forward, she would report to Defendant Acevedo.

27.     Following her transfer, Plaintiff worked diligently to building a connection and impress her manager Defendant Acevedo and felt as though she was quickly making ground to ensure he was pleased with her performance. But her impression was quickly met with Defendant Acevedo's reality.

28.     On or around October 15, 2022, Defendant Acevedo began the workday by instructing the team to call two "NC Appointments." Plaintiffs then Branch Manager, Jack Reed, responded to Defendant Acevedo, indicating that he did not feel "comfortable" calling a customer at such an early hour on a Saturday. Seeing the dialogue between Mr. Reed and Defendant Acevedo, Plaintiff agreed with Mr. Reed, indicating she felt uncomfortable at such an early hour and was "not trying to get cursed out on a Saturday morning *again*" (emphasis added). Despite Mr. Reed initiating the conversation as to delayed phone calls, Defendant Acevedo began to unabashedly berate and reprimand Plaintiff, in the presence of her colleagues.

29.     In fact, at one point, Plaintiff's male colleagues indicated that they did not feel the public "scolding" of Ms. Wentworth was appropriate. At no time did Defendant Acevedo reprimand, let alone public ally berate Plaintiff's male colleagues.

30.     This act of public ridicule, to the exclusion of Plaintiff's colleagues, continued when Defendant Acevedo insisted on continuing the chat privately. One on a call, Defendant Acevedo became irate, refusing to provide Plaintiff an opportunity to provide input, before unceremoniously hanging up on her.

31. Plaintiff was bewildered by his conduct. Not only did Defendant Acevedo fail to provide Plaintiff the opportunity to engage or provide context, but her actively disregarded the conduct of her male colleagues, instead choosing to target her exclusively.

32. Immediately following this conversation, Plaintiff called Defendant WBAC's Human Resources department, wherein she spoke with Defendant WBAC's HR Operations Manager, Kaylee Stroup (hereinafter referred to as "Ms. Stroup"), and Defendant WBAC's Senior Human Resources Leader, Stan Dombrowski (hereinafter referred to as "Mr. Dombrowski") to arrange an in-person meeting/call to discuss the events of that morning. Plaintiff was advised she would receive a call back when they completed their meeting, but no such call ever came.

33. On or around October 19, 2022, after attempting to schedule an appointment to meet in person/speak on the phone and receiving no response, Plaintiff emailed Ms. Stroup and Mr. Dombrowski, where she provided them with a detailed recounting of the meeting/group chat and subsequent phone call on October 15, 2022.

34. Plaintiff complained about the mistreated me she was being subjected to by Defendant Acevedo, expressing in no uncertain terms that this was a result of her gender. Plaintiff made clear that "If I was a man, Carlos would not have hung up the phone while I was speaking nor would he have attempted to address *only* me." Plaintiff went on to explain that, "As a woman, I am disappointed and disgusted by the lack of respect." Ultimately, Plaintiff expressed that she understands that coaching and criticism are necessary, but the disproportionate manner in which Defendant Acevedo conducts himself in publicly humiliating only Plaintiff, in the presence of her male colleagues, is humiliating and "disappointing." As Ms. Wentworth summed up: "[Defendant Acevedo] would *never* do that to a man."

35.    In reaching out, Plaintiff was optimistic that Defendant Acevedo's conduct would be addressed and that she would be able to move forward securely in her employment. Unfortunately, that was far from reality.

36.    Defendant WBAC failed to reasonably and/or timely investigate Plaintiff's complaint of gender-based discrimination by Defendant Acevedo, instead allowing his conduct to worsen without remedy.

37.    On or around October 20, 2022, Plaintiff was contacted by Defendant Acevedo. Again, he pressured Plaintiff, interrogating her about why the doors to the location were locked. Plaintiff explained that, as he was previously made aware, Plaintiff was concerned about her safety as a woman when alone and locks the doors for security reasons. Defendant Acevedo proceeded to request a meeting with Plaintiff.

38.    When she requested that Mr. Reed be present as a "witness," Defendant Acevedo began to retaliate against Plaintiff, instating he was providing Plaintiff a formal write-up following a client interaction he deemed negative. When Plaintiff refused to sign the writeup, Defendant Acevedo threatened Plaintiff, stating that he was moving her back to the Lawrence Office, effective the following Monday, October 24, 2022.

39.    Plaintiff was humiliated. She was provided no justification for the transfer against her will, other than because Defendant Acevedo "said so."

40.    On or around October 22, 2022, Plaintiff received a formal copy of her schedule for the following week, reflecting the transfer to the Lawrence Office against her will. Plaintiff had received no follow up or instructions from H.R. as to her complaint, the write-up, nor the transfer.

41.     As such, Plaintiff against emailed Ms. Stroup. Plaintiff wanted to discuss the transfer before moving forward. Plaintiff additionally emailed Defendant Acevedo, advising that she wanted to meet him to discuss the transfer before it goes into effect. She advised that she reported to the Langhorne Office that Monday where they could discuss.

42.     On or around October 24, 2022, as she advised, Plaintiff reported to the Langhorne Office with the intention of trying to find a resolution to move forward with Defendant Acevedo. Plaintiff was aware that Defendant WBAC's H.R. team felt no urgency in addressing her complaints and felt she had no alternative but to speak with Defendant Acevedo directly.

43.     At or around 9:00 AM, to her surprise, Defendant Acevedo arrived with another man whom Plaintiff did not recognize. Defendant Acevedo and the gentleman met with Plaintiff at which time they advised she was being terminated effectively immediately, saying snidely, "You don't always get your way in life."

44.     On or around October 24, 2022, Defendants wrongfully and unlawfully terminated Plaintiff. Defendants wrongfully terminated Ms. Wentworth because of her gender and as a direct result of her complaints of unlawful conduct by Defendant Acevedo.

45.     The Defendants unlawfully terminated Ms. Wentworth in violation of Title VII, and the PHRA.

46.     The events described above are just some of the examples of unlawful discrimination and retaliation Defendants subjected Ms. Wentworth to on a continuous and on-going basis throughout her employment.

47.     Defendants exhibited years of continuous patterns and practices of discrimination, and Ms. Wentworth therefore makes all claims herein under the continuing violations doctrine.

8

48.     Upon information and belief, Defendants' discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing discrimination and retaliation.

49.     Despite her unlawful termination, Defendant WBAC, by and through its manager Defendant Acevedo, persist in unlawfully harassing and retaliating against Plaintiff.

50.     Plaintiff further claims retaliation to the extent Defendants interfere with and/or impact Plaintiff's search for future employment, including but not limited to providing false, misleading, or outright defamatory information under the guise of providing a "reference."

51.     Defendants unlawfully discriminated against Ms. Wentworth because of her sex and because she opposed and complained about Defendants' unlawful employment practices.

52.     Thus, Defendants violated Title VII, and the PHRA by subjecting Ms. Wentworth to a hostile work environment, disparate treatment, retaliation.

53.     As a result of the acts and conduct complained herein, Ms. Wentworth has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Wentworth has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Wentworth has further experienced severe emotional and physical distress.

54.     As a result of Defendants' collective actions, Ms. Wentworth felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55.     As Defendants' conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law, Ms. Wentworth respectfully seeks all available damages

including but not limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and punitive damages.

56.    Plaintiff demands punitive damages as against Defendant WBAC and Defendant Acevedo, jointly and severally.

57.    At bottom, Defendants are liable for violating Ms. Wentworth's personal dignity, and depriving Ms. Wentworth of her civil right to pursue an equal employment opportunity.

## CAUSES OF ACTION

### COUNT I
### Title VII, 42 U.S.C. § 2000e-2(a)
### Gender Discrimination – Disparate Treatment
### (Not Against Individual Defendant)

58.    Plaintiff reincorporates the factual allegations in the previous paragraphs.

59.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

60.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

61.    Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

62.    Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

63.    Plaintiff Wenworth is an individual female and is therefore, a protected class member.

64.    The Defendant WBAC subjected Plaintiff Wentworth to discriminatory treatment on the basis of her sex/gender.

65.    The Defendant WBAC, by and through its' supervising staff, targeted Plaintiff Wentworth because of her gender. Plaintiff Wentworth was treated less favorably than her similarly situated counterparts.

66.    As a result of the Defendant WBAC's disparate treatment, Plaintiff Wentworth suffered a "tangible employment action" defined as a significant change in employment status, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

67.    As a direct and proximate result of the Defendant WBAC's discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

68.     The Defendant WBAC's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Wentworth's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

69.     Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

70.     The conduct of the Defendant WBAC deprived Plaintiff Wentworth of her statutory rights guaranteed under Title VII.

71.     Plaintiff has been damaged by the illegal conduct of Defendant WBAC.

**COUNT II**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Gender Discrimination - Hostile Work Environment**
**(Not Against Individual Defendant)**

72.     Plaintiff reincorporates the factual allegations in the previous paragraphs.

73.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

74.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

75.     Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

76.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

77.     Plaintiff Wenworth is an individual female and is therefore, a protected class member.

78.     The Defendant WBAC regularly harassed Plaintiff Wentworth because of her sex/gender.

79.     Further, Plaintiff Wentworth was treated less favorably than her similarly situated counterparts.

80.     The Defendant WBAC's discriminatory conduct was not welcomed by Plaintiff Wentworth.

81.     The Defendant WBAC's discriminatory treatment was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating hostile or abusive.

82.     As a result of the hostile work environment, Plaintiff Wentworth suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

83.     The Defendant WBAC failed to exercise reasonable care to prevent gender harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of gender, failing to fully and effectively communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Wentworth to make a claim

of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

84.     As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

85.     The Defendant WBAC's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Wentworth's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

86.     Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

87.     The conduct of the Defendant WBAC deprived Plaintiff Wentworth of her statutory rights guaranteed under Title VII.

88.     Plaintiff has been damaged by the illegal conduct of Defendant WBAC.

**COUNT III**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Retaliation**
**(Not Against Individual Defendant)**

89.     Plaintiff reincorporates the factual allegations in the previous paragraphs.

90.     Title VII protects employees from retaliation for attempting to exercise her rights under the Act.

91. Title VII provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

92.    The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

93.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

94.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

95.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could constitute actionable retaliation because it "is the kind of action that might

15

dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

96.     Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

97.     Plaintiff Wentworth engaged in a protected activity when she opposed and reported the Defendant's unlawful discrimination.

98.     Plaintiff Wentworth complained of the discriminatory comments and conduct to Defendant WBAC.

99.     In response to these complaint of gender discrimination, the Defendant WBAC retaliated against Plaintiff Wentworth by transferring Plaintiff, and eventually unlawfully terminating Plaintiff Wentworth.

100.    The Defendant WBAC took the above-described materially adverse actions against Plaintiff Wentworth because of her protected activities.

101.    Any reasonable employee in Plaintiff Wentworth's position would be dissuaded from reporting discrimination if they knew that they would be subjected to the kind of treatment Plaintiff Wentworth was forced to endure.

102.    As a direct and proximate result of the Defendant WBAC's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and

other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages

103.    The Defendant WBAC's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff Wentworth's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

104.    Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

105.    The conduct of the Defendants deprived Plaintiff Wentworth of her statutory rights guaranteed under Title VII/

106.    Plaintiff has been damaged by the illegal conduct of Defendant WBAC.

**COUNT IV**
**PHRA, as amended, 43 P.S. § 955 (a)**
**Gender Discrimination – Disparate Treatment**
**(Not Against Individual Defendant)**

107.    Plaintiff reincorporates the factual allegations in the previous paragraphs.

108.    The PHRA § 955 provides that  it shall be an unlawful discriminatory practice:  "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

17

109. The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

110. Plaintiff Wenworth is an individual female and is therefore, a protected class member.

111. The Defendant WBAC subjected Plaintiff Wentworth to discriminatory treatment on the basis of her sex/gender.

112. The Defendant WBAC, by and through its' supervising staff, targeted Plaintiff Wentworth because of her gender. Plaintiff Wentworth was treated less favorably than her similarly situated counterparts.

113. As a result of the Defendant WBAC's disparate treatment, Plaintiff Wentworth suffered a "tangible employment action" defined as a significant change in employment status, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

114. As a direct and proximate result of the Defendant WBAC's discriminatory conduct in violation of PHRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

115. The Defendant WBAC's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Wentworth's rights under PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

116. Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

117. The conduct of the Defendant WBAC deprived Plaintiff Wentworth of her statutory rights guaranteed under PHRA.

118. Plaintiff has been damaged by the illegal conduct of Defendant WBAC.

**COUNT V**
**PHRA, as amended, 43 P.S. § 955 (a)**
**Gender Discrimination - Hostile Work Environment**
**(Not Against Individual Defendant)**

119. Plaintiff reincorporates the factual allegations in the previous paragraphs.

120. The PHRA also prohibits hostile work environment harassment, which is harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee (e.g., sex/gender) that is severe or pervasive enough to make a reasonable person with that protected characteristic (e.g., a reasonable person of the involved sex/gender) believe the conditions of the workplace are altered and the working environment is hostile or abusive. Hoy v. Angelone, 691 A.2d 476, (Pa. Super. 1997).

121. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

122. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

123.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

124.    Plaintiff Wenworth is an individual female and is therefore, a protected class member.

125.    The Defendant WBAC regularly harassed Plaintiff Wentworth because of her sex/gender.

126.    Further, Plaintiff Wentworth was treated less favorably than her similarly situated counterparts.

127.    The Defendant WBAC's discriminatory conduct was not welcomed by Plaintiff Wentworth.

128.    The Defendant WBAC's discriminatory treatment was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating hostile or abusive.

129.    As a result of the hostile work environment, Plaintiff Wentworth suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

130.    The Defendant WBAC failed to exercise reasonable care to prevent gender harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of gender, failing to fully and effectively communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Wentworth to make a claim

of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

131.    As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

132.    The Defendant WBAC's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Wentworth's rights under PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

133.    Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

134.    The conduct of the Defendant WBAC deprived Plaintiff Wentworth of her statutory rights guaranteed under PHRA.

135.    Plaintiff has been damaged by the illegal conduct of Defendant WBAC.

**COUNT VI**
**PHRA, as amended, 43 P.S. § 955 (D)**
**Retaliation**
**(As Against All Defendants)**

136.    Plaintiff reincorporates the factual allegations in the previous paragraphs.

137.    The PHRA protects employees from retaliation for attempting to exercise her rights under the Act.

138.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

139.    Pursuant to the provisions contained within the PHRA, both employers and individual employees can be held liable for retaliation under Pennsylvania Law. 43 Pa. Cons. Stat. § 955 (d). See also, Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

140.    The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

141.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

142.    Retaliation need not be job-related to be actionable under the PHRA—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

143.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation

existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could constitute actionable retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

144.    The PHRA not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

145.    Plaintiff Wentworth engaged in a protected activity when she opposed and reported the Defendants' unlawful discrimination.

146.    Plaintiff Wentworth complained of the discriminatory comments and conduct to Defendants.

147.    In response to Plaintiff's complaint of gender discrimination, the Defendants retaliated against Plaintiff Wentworth by transferring Plaintiff, and eventually unlawfully terminating Plaintiff Wentworth.

148.    The Defendants took the above-described materially adverse actions against Plaintiff Wentworth because of her protected activities.

149.    Any reasonable employee in Plaintiff Wentworth's position would be dissuaded from reporting discrimination if they knew that they would be subjected to the kind of treatment Plaintiff Wentworth was forced to endure.

150.    As a direct and proximate result of the Defendants' collective retaliatory conduct in violation of the PHRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

151.    The Defendants' collective actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Wentworth's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

152.    Plaintiff demands punitive damages as against Defendant WBAC and Defendant Acevedo, jointly and severally.

153.    Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

154.    The conduct of the Defendants deprived Plaintiff Wentworth of her statutory rights guaranteed under the PHRA.

155.    Plaintiff has been damaged by the illegal conduct of Defendants WBAC and Acevedo.

## COUNT VII
## PHRA, as amended, 43 P.S. § 955 (E)
## Aid and Abetting
## (As Against All Defendants)

156.    Plaintiff reincorporates the factual allegations in the previous paragraphs.

157.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

158.    Pursuant to the provisions contained within the PHRA, both employers and individual employees can be held liable for retaliation under Pennsylvania Law. 43 Pa. Cons. Stat. § 955 (e). See also, Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

159.    Defendants collectively engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

160.    As a direct and proximate result of the Defendants' collective retaliatory conduct in violation of the PHRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Wentworth has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Wentworth accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

161.    The Defendants' collective actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Wentworth's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

162.    Plaintiff demands punitive damages as against Defendant WBAC and Defendant Acevedo, jointly and severally.

163.    Plaintiff Wentworth further requests that her attorney's fees and costs be awarded as permitted by law.

164.    The conduct of the Defendants deprived Plaintiff Wentworth of her statutory rights guaranteed under the PHRA.

165.    Plaintiff has been damaged by the illegal conduct of Defendants WBAC and Acevedo.

## INJURY AND DAMAGES

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff Wentworth requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Wentworth demands judgment against Defendant WBAC and Defendant Acevedo, jointly and severally, in an amount to be determined at the time of trial plus

interest, including, but not limited to, all compensatory damages, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees and costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  February 28, 2024,                    **DEREK SMITH LAW GROUP, PLLC**
                                              *Counsel for Plaintiff*

                                              */s/ Caroline H. Miller*
                                              Caroline H. Miller, Esquire
                                              Derek Smith Law Group, PLLC
                                              1628 Pine Street,
                                              Philadelphia, Pennsylvania 19103
                                              Tel: (786) 292-7605
                                              Fax: (305) 503-6741
                                              E-Mail: Caroline@dereksmithlaw.com

27